UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SAMUEL SAN MIGUEL and | § | |
| MARTIN LUJAN, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 23-CV-697-RP-SH |
| | § | |
| CHRISTY JACK, MARSHA McLANE, | § | |
| JESSICA MARSH, KARA GOUGLER, | § | |
| RACHEAL KINGSTON, CHRIS | § | |
| GREEWALT, MANDI CASTILLO, and | § | |
| MANAGEMENT TRAINING | § | |
| CORPORATION (MTC), | § | |
| Defendants. | § | |

## ORDER

Before the Court is Plaintiffs Samuel San Miguel and Martin Lujan's pro se complaint filed pursuant to 42 U.S.C. § 1983. (ECF No. 1). The Court granted San Miguel leave to proceed in forma pauperis. Upon review, the Court orders Martin Lujan's claims dismissed without prejudice and San Miguel's claims dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court also denies San Miguel's pending motions.

## I. Background

San Miguel and Lujan are involuntarily civilly committed as a Sexually Violent Predators (SVPs) and currently reside at the Texas Civil Commitment Center (TCCC) in Littlefield, Texas. Plaintiffs' supervision is currently managed by the Texas Civil Commitment Office (TCCO).

Plaintiffs name the following defendants: Christy Black, Chair of the TCCO Board of Directors; Marsha McLane, Executive Director of TCCO; Jessica Marsh, Deputy Director of TCCO; Kara Gougler, Civil Commitment Manager; Rachael Kingston, TCCO Contract Compliance Manager; Mandi Castillo, TCCO Case Manager; Chris Greenwalt, TCCO Unit

Supervisor; and the Management and Training Corporation (MTC). Plaintiffs state Defendants Jack, McLane, Marsh, Gougler, Greenwalt, Kingston, and MTC are named in their individual and official capacities, whereas Defendant Castillo is only named in her individual capacity. San Miguel and Lujan claim the following:

1. Defendants Jack, McLane, Marsh, and Gougler violated their Fourteenth Amendment procedural and substantive due process rights, as well as the Equal Protection clause, by subjecting them to arbitrary government action and policy and substantially deviating from clinical professional judgment.

2. Defendants Jack, McLane, Marsh, Gougler, and MTC have violated their Fourteenth Amendment procedural and substantive due process rights, as well as the Equal Protection clause, by not affording Plaintiffs the same status as other civil committees and by subjecting them to conditions of confinement that amount to punishment.

3. Defendants Jack, McLane, Marsh, Gougler, and MTC have violated Plaintiffs' Fourteenth Amendment substantive due process rights by subjecting them to conditions of confinement that amount to punishment and by treating them worse than prisoners at the Texas Department of Criminal Justice (TDCJ).

4. Defendants Jack, McLane, Marsh, Gougler, and MTC have forced Plaintiffs to live in an environment where they do not know when there will be unconstitutional deprivations of property, liberty, or privileges, which violates their right to substantive due process.

5. Defendants Jack, McLane, Marsh, Gougler, and MTC are violating Plaintiffs' substantive due process rights by denying TCCC residents an electronic tablet when this is a privilege provided to TDCJ prisoners.

6. Defendants Jack, McLane, Marsh, and Gougler have violated Plaintiffs' procedural and substantive due process rights, as well as the Equal Protection clause, by not allowing outside food from restaurants or packaged food from stores, and not allowing visitors to bring food with them.

7. Defendants Jack, McLane, Marsh, Gougler, and Kingston violated San Miguel's procedural and substantive due process rights, as well as his rights to equal protection, by putting him on punitive restriction from April 14, 2018, through October 15, 2022, for his refusal to take a penile plethysmography (PPG) exam during that time.

8. Defendants Jack, McLane, Marsh, and Gougler have violated San Miguel's right to substantive and procedural due process, as well as his right to equal protection, by depriving him of his property.

9.  Defendants Jack, McLane, Marsh, and Gougler violated San Miguel's substantive and procedural due process rights, and subjected him to the intentional infliction of emotional distress, when they allowed a popcorn machine to be placed outside of San Miguel's isolation cell where he was on a hunger strike protesting TCCC's unconstitutional policies.

(ECF No. 1 at 26-29.)

Plaintiffs request declaratory and injunctive relief, as well as monetary damages. Plaintiffs specifically do not request monetary damages against the defendants in their official capacities. (ECF No. 1.)

## II. Applicable Law

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a case if the Court determines that the action is (i) frivolous or malicious, (ii) fails to state claim on which relief may be granted, or (iii) seeks monetary relief against a defendant who is immune from such relief. Such a dismissal may occur "'before service of process or before the filing of the answer' as long as certain safeguards are met." *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) (quoting *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990)).

An action is frivolous where there is no arguable legal or factual basis for the claim. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges a violation of a legal interest which clearly does not exist.'" *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998)). A complaint is factually frivolous when "the facts alleged are 'fantastic or delusional scenarios' or the legal theory upon which a complaint relies is 'indisputably meritless.'" *Eason v. Thaler*, 14 F.3d 8, 9 n.5 (5th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327-28).

3

In evaluating whether a complaint states a claim under § 1915(e)(2)(B), this Court applies the same standards governing dismissals pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* FED. R. CIV. P. 12(b)(6); *DeMoss v. Crain*, 636 F.3d 145, 152 (5th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. The Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *See Raj v. La. State Univ.*, 714 F.3d 322, 329-30 (5th Cir. 2013). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, a plaintiff's factual allegations must establish more than just the "sheer possibility" a defendant has acted unlawfully. *Id.*; *Twombly*, 550 U.S. at 555 (factual allegations must be enough to raise a right to relief above the speculative level). Determining a complaint's plausibility is a "context-specific task," but if the factual allegations do not point to more than "the mere possibility of misconduct" the complaint has failed to state a claim upon which relief can be granted. *Iqbal*, 566 U.S. at 679.

The Court construes a pro se plaintiff's allegations liberally, holding the plaintiff to "less stringent pleading standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, a plaintiff's pro se status does not offer him an "impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

4

### III. Analysis

A. Joinder of Plaintiffs

Plaintiff San Miguel seeks to join Martin Lujan as a plaintiff in this action and includes allegations and claims he states are specific to Lujan; however, San Miguel is the only plaintiff who signed the complaint. (ECF No. 1 at 23-26, 29-32.) As a pro se plaintiff, San Miguel is prohibited from representing Mr. Lujan in this action because he is not a licensed attorney. 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel"); *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 210 (5th Cir. 2016) ("it is axiomatic that an individual may proceed pro se in federal court, . . . but it is equally certain that those not licensed to practice law may not represent the legal interests of others") (citations omitted)). Accordingly, because San Miguel cannot represent the interests of Mr. Lujan in this complaint, Mr. Lujan's claims are dismissed without prejudice to his refiling them in a separate civil lawsuit.

B. Personal Involvement and Statute of Limitations

To state a 1983 claim against a defendant in his or her individual capacity, a plaintiff must allege the defendant was personally involved in the actions complained of or is responsible for the policy or custom giving rise to the alleged constitutional deprivation. *See Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (holding that, under § 1983, officials are not vicariously liable for conduct of those under their supervision, they are accountable for their own acts and for implementing unconstitutional policies that result in constitutional deprivations); *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'").

San Miguel fails to make any allegations that Defendants Greenwalt or Castillo were personally involved in the violation of his constitutional rights. As for Defendants Marsh, Gougler, Kingston, and MTC, San Miguel's claims against them in their individual capacities are barred the statute of limitations. The statute of limitations for a § 1983 claim is determined by the forum state's limitations period for personal injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Texas, that is two years from the date the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Schaefer v. Gulf Coast Reg'l Blood Ctr.*, 10 F.3d 327, 331 (5th Cir. 1994). It is federal law which determines when a § 1983 cause of action accrues. *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993). Under federal law, a cause of action under § 1983 accrues when the aggrieved party knows, or has reason to know of, the injury or damages which form the basis of the action. *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995).

The following are the only allegations San Miguel advances against Marsh, Gougler, Kingston, and MTC which implicate those Defendants' personal involvement:

(1) On July 18, 2018, Jack, McLane, Marsh, and Gougler worked together to deprive San Miguel of his property when he was moved from Tier 2 to Tier 1. San Miguel filed grievances about this deprivation, one of which Gougler denied on October 5, 2018.

(2) In August 2018, McLane, Marsh, and Gougler allowed TCCC staff to pop popcorn in front of San Miguel's cell while he was on a hunger strike protesting the deprivation of his property on July 18, 2018.

(3) In 2018, McLane, Marsh, and Gougler confiscated all Tier 2 residents' electronic devices for 60 days without due process. McLane then ordered TCCC staff to search the confiscated devices for rule violations.

(4) In October 2018, McLane, Marsh, and Gougler initiated a TCCC lockdown for 3 days, allowing TCCC staff to go through every TCCC residents' room and deface, break, and confiscate their electronic property.

(5) On May 6, 2020, San Miguel requested one commissary purchase, stating he had not been allowed a purchase for over 2.5 years. Defendant Kingston denied the request on May 8, 2020, stating San Miguel is on restriction. (ECF No. 1-1 at 64.)

(6) On April 13, 2021, MTC officers confiscated electronic devices from all residents in the B-building where San Miguel resides. His black Beats headphones were confiscated. San Miguel sent communications to an MTC officer and Marsh the next day about the confiscation, and Marsh responded that electronics are not approved for San Miguel's dorm based on the Tiered Housing Policy.

(ECF No. 1 at 4-18.)

San Miguel's individual-capacity claims against Marsh, Gougler, Kingston, and MTC are barred by the statute of limitations. Claims arising out of allegations 1-4 accrued, at the latest, on December 31, 2020. San Miguel's claim against Kingston accrued on May 8, 2022. Finally, any claims arising out of allegation 6 accrued by April 23, 2023, two years after Jessica Marsh responded to San Miguel's communications regarding the confiscation of his Beats headphones. (ECF No. 1-1 at 69.) San Miguel signed his complaint on June 7, 2023, and it was filed with the Court on June 14, 2023. Accordingly, any claims arising from this allegation were filed two months after the limitation period expired.

Although San Miguel states that Marsh and Gougler share statutory responsibility with Jack and McLane for the treatment and supervision of TCCC residents, there are no specific allegations in his complaint that Marsh or Gougler implemented a policy that resulted in deprivations of San Miguel's constitutional rights. The only timely allegation San Miguel makes against Gougler is that, when he asked why TCCO had not distributed electronic tablets to TCCC residents even though TDCJ inmates already had tablets, she responded "It is [in the] process of being discussed." (ECF No. 1-1 at 82.) At most, this is an allegation that San Miguel was dissatisfied with Gougler's response to his grievance; however, it is well-established that there is no protected liberty interest having grievances addressed and resolved to the complainant's satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *see also Hawes v. Stephens*, 964 F.3d 412, 418 (5th Cir. 2020) (same).

Accordingly, because San Miguel only names Defendant Castillo in her individual capacity but fails to allege she was personally involved in violating his constitutional rights, San Miguel's claims against Castillo are dismissed. Further, because San Miguel fails to allege the personal involvement of Defendants Greenwalt, Marsh, Gougler, Kingston, or MTC in the violation of his constitutional rights, his individual-capacity claims against these defendants are also dismissed.

D. Remaining Claims

*Claim 1: TCCO Package Policy*

In San Miguel's first claim, he argues Defendants are using civil commitment to punish TCCC residents. San Miguel alleges that from 2015-2017, TCCC residents were treated the same regardless of the differences in their treatment levels: they were all housed together and no residents were punished when their treatment level dropped. However, this changed in 2017 when McLane, with ratification from Jack, began implementing a Tiered Housing Policy that deprived residents of their property and privileges with no clinical reasoning or due process. Specifically, San Miguel and other Tier 1 residents were only allowed a family package every 6 months, rather than once a month. San Miguel alleges this package policy violates his procedural and substantive due process rights as well as his right to equal protection.

San Miguel advanced a very similar claim in *San Miguel v. Abbott*, No. 1:21-cv-00566-RP (W.D. Tex. Jan. 20, 2022) (hereinafter *San Miguel 1*). In that case, San Miguel challenged Texas's Sexually Violent Predators Act (SVPA) on the basis that it was punitive in nature and therefore violated his constitutional rights. The Court concluded that San Miguel's facial challenge to the SVPA failed because he had not alleged that there were no set of circumstances under which the SVPA would be valid. The Court then concluded San Miguel's as-applied

challenge to the SVPA also failed based on the Fifth Circuit's holding in *Brown v. Taylor*, 911 F.3d 235, 243 (5th Cir. 2018). The Court's decision was affirmed on appeal. *San Miguel v. Abbott*, No. 22-50413, 2023 WL 5032480 (5th Cir. Aug. 8, 2023).

All of San Miguel's claims in the instant case are motivated by the same impulse that motivated his claims in *San Miguel 1*: that his civil-commitment is punishing him rather than rehabilitating him. He has reframed the allegations in this complaint as a challenge to certain events and conditions-of-confinement at TCCC rather than a challenge to the SVPA itself. Because San Miguel names different defendants and his claims arise from specific incidents at TCCC, the Court proceeds by analyzing his claims rather than dismissing them as frivolous in their entirety. *Cf. Wilson v Lynaugh*, 878 F.2d 846, 850 (5th Cir. 1989) ("IFP complaints may be dismissed as frivolous pursuant to § 1915[e] when they seek to relitigate claims which allege substantially the same facts arising rom a common series of events which have already been unsuccessfully litigated by the IFP plaintiff.")

i. Procedural due process

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must first establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To state a claim for a violation of his right to procedural due process, San Miguel must first identify a liberty or property interest that triggers the protections of the Fourteenth Amendment. A liberty interest can arise from either the Constitution itself or from an "expectation or interest created by state laws or policies." *Id.*

San Miguel's procedural due process rights could only be implicated if he claimed that his privileges were reduced without first receiving due process. For prisoners, however,

commissary and cell restrictions are "merely changes in the conditions of [] confinement and do not implicate due process concerns." *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). San Miguel, however, is not a prisoner and therefore might be entitled to more constitutional protections. Nonetheless, the package policy San Miguel attaches to his complaint went into effect in 2017, and the only factual allegations San Miguel raises regarding being moved from Tier 2 to Tier 1—and thus losing some package privileges—occurred on July 18, 2018, and thus are outside the statute of limitations. Accordingly, San Miguel's procedural due process claim based on package restrictions is barred by the statute of limitations.

### ii. Substantive Due Process

San Miguel also claims the package restrictions violates his substantive due process rights. As a civil committee, San Miguel is "'entitled to more considerate treatment and conditions of confinement'" than prisoners; however, "the Constitution nevertheless affords a state wide latitude in crafting a civil commitment scheme." *Brown*, 911 F.3d at 243 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982)). Civil committees have substantive due process rights independent of their procedural due process rights. *Hitt v. McLane*, 854 F. App'x 591, 596 (5th Cir. 2021). In the context of civil commitment, substantive due process requires "only that 'the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed.'" *Brown*, 911 F.3d at 243 (quoting *Seling v. Young*, 531 U.S. 250, 265 (2001)). In Texas, the purposes of civil commitment are the "twin goals of 'long-term supervision and treatment of sexually violent predators.'" *Id.* (citation omitted).

To state a claim, San Miguel must therefore show that the package restriction policy he complains of bears no reasonable relationship to the twin goals of long-term supervision and treatment of sexually violent predators. However, based on San Miguel's allegations, it appears

the policy does bear a reasonable relationship with these goals: the increase in privileges associated with higher treatment tiers is meant to incentivize TCCC clients to progress in their treatment. San Miguel alleges as much in his complaint when he quotes Defendant Jack as saying, "Per Ms. McLane, the program is also addressing client participation by providing rewards or privileges for actively participating in the program, doing what is expected." (ECF No. 1 at 9.)[1] Such a system also creates a built-in disincentive to regress in treatment due to the resulting loss in privileges. Based on the facts alleged in the complaint, this policy bears a reasonable relationship to the purposes for which San Miguel was committed and he therefore fails to state a claim for a violation of his right to substantive due process.

### iii. Equal Protection

Finally, San Miguel claims this policy violates his right to equal protection because it treats Tier 1 clients differently than Tier 2 clients. The Fourteenth Amendment's Equal Protection Clause commands that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To maintain a claim for an equal protection violation, San Miguel must allege and prove purposeful discrimination by the defendants resulting in a discriminatory effect among persons similarly situated. *See Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992). "[D]isparate impact alone cannot suffice to state an Equal Protection violation; otherwise, *any* law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (citation omitted). Discriminatory purpose in an equal protection context implies the decision maker selected a particular course of

---

[1] The page San Miguel cites to in support of this statement is missing from the attachments to his complaint. In reviewing his complaint, the Court accepts this allegation as true.

action in part because of, and not just in spite of, the adverse impact it would have on an identifiable group. *Id.*

San Miguel alleges that the fact Tier 2 clients can receive packages every three months whereas Tier 1 patients can receive packages every six months violates Equal Protection. However, he fails to allege any discriminatory purpose, i.e., that Defendants selected this policy as a means of punishing Tier 1 clients. Rather, San Miguel's allegations show that Defendants adopted this policy as a means of incentivizing treatment progression, not as a means of punishing treatment regression. Accordingly, San Miguel fails to state a claim for an equal protection violation.

*Claim 2: TCCC clients versus other civilly-committed persons*

In San Miguel's second claim, he argues TCCC clients are treated worse than other civilly-committed persons. Specifically, San Miguel alleges that Montgomery County pretrial detainees who have been deemed unfit to stand trial enjoy greater privileges than TCCC residents, including having a cell phone, free phone calls, and less restrictive punishments. He claims this violates his procedural and substantive due process rights, along with his right to equal protection.

San Miguel's claim that this difference in treatment violates his procedural due process rights is conclusory and fails to state a claim. *Iqbal*, 566 U.S. at 678. With regard to substantive due process, San Miguel fails to show that his treatment at TCCC does not bear a reasonable relationship to the goals of supervision and treatment for TCCC clients. Further, as the Court noted in *San Miguel 1*, the Fifth Circuit has held that "[p]roximity to prisoners and restrictive conditions alone do not state a due process claim." *Brown*, 911 F.3d at 243. In *Brown*, a Texas SVP complained of allegedly "'squalid living conditions, harassment from staff members and

prisoners/parolees,' and [an] inadequate grievance procedure." *Id.* at 241. The Fifth Circuit held that *Kansas v. Hendricks*, 521 U.S. 346 (1997) foreclosed claims that civil-commitment facilities and statutory schemes violated due process by being "too prison-like." *Id.* at 243. Rather, the court found that the conditions the plaintiff complained about were reasonably related to State's twin goals of the "'long-term supervision and treatment of sexually violent predators.'" *Id.* Accordingly, San Miguel's claim that TCCC clients are treated worse than pretrial detainees in Montgomery County does not state a claim for the violation of his substantive due process rights.

Finally, regarding his rights to equal protection, San Miguel does not allege specific facts as to how TCCC clients, who are being confined by the state for treatment and long-term supervision, and Montgomery County pretrial detainees who are unfit to stand trial, are similarly situated for purposes of equal protection. Accordingly, this claim also fails as a matter of law.

*Claim 3: TCCC residents receive harsher punishments than TDCJ inmates*

In San Miguel's third claim, he argues Defendants violate his substantive due process rights by imposing punishments on TCCC clients that are 300% longer in duration than those imposed on TDCJ inmates. This claim was already litigated in *San Miguel 1* and should be dismissed as frivolous. *See Wilson*, 878 F.2d at 850. Alternatively, this claim fails to state a claim for relief because, as noted above, the Fifth Circuit has held that "prison-like" conditions do not violate an SVP's substantive due process rights. *Brown*, 911 F.3d at 243.

*Claims 4 & 5: Arbitrary deprivations of property and liberty at TCCC*

In San Miguel's fourth and fifth claims, he argues the conditions of confinement at TCCC violate his substantive right to due process because he is forced to live in an environment where he doesn't know when unconstitutional deprivations of his property and liberty will occur. San Miguel alleges that, from April 2018 through October 2022, he was not allowed to purchase

commissary items because he refused to take a PPG exam. From July 2018 to the present day, TCCC residents on punitive restriction, like San Miguel, have not been allowed to receive packages larger than a standard business size envelope. Since February 2022, TCCC clients have not had access to electronic tablets even though TDCJ inmates do, and in January 2023, TCCC confiscated all residents' 1 GB SD cards which are only compatible with a certain kind of word processor. San Miguel does not state whether he had an SD card that was confiscated.[2]

Again, San Miguel has failed to allege that the conditions of his confinement do not bear a reasonable relationship with the goals of his civil commitment, i.e., supervision and treatment. It is not unreasonable for TCCO/TCCC to impose restrictions on commissary privileges because San Miguel refuses to take a required exam. Further, while it appears from his pleadings that San Miguel's mail restrictions are also related to his failure to take the PPG exam, nonetheless his right to associate with others has not been fully restricted because he can still receive some kinds of mail. *See Bohannon v. Doe*, 527 F. App'x 283, 294 (5th Cir. 2013) (restrictions on civilly-committed SVP's First Amendment rights will be upheld if they are reasonably related to the goals of treatment and rehabilitation); *see also Ahlers v. Rabinowitz*, 684 F.3d 53, 64 (2d Cir. 2012) (reasonable restrictions on mail to and from civilly-committed SVPs have withstood First Amendment scrutiny). San Miguel does not have a substantive due process right to an electronic tablet, and even assuming he had an SD card confiscated in January 2023—which he does not allege—San Miguel has failed to show the restriction, which he alleges was based on another TCCC resident violating a facility rule, was not reasonably related to his treatment or long-term supervision. Accordingly, these claims are dismissed for failure to state a claim.

---

[2] Many of San Miguel's supporting allegations occurred outside the limitations period, as previously noted.

*Claim 6: No access to food from family or community*

San Miguel claims his substantive and procedural due process rights, as well as his right to equal protection, have been violated by Defendants not allowing him outside food from the community or his family. This claim must be dismissed as frivolous because it was previously adjudicated in *San Miguel v. Cochran*, No. 5:20-cv-041-C, 2022 WL 774147 (N.D. Tex. Feb. 18, 2022), *report & recommendations adopted by* 2022 WL 768628 (N.D. Tex. Mar. 14, 2022). *See Wilson*, 878 F.2d at 850.

*Claim 7: Punishment for refusal to take PPG exam*

San Miguel claims his procedural and substantive due process rights, as well as his right to equal protection, were violated when Defendants punished him from April 14, 2018 to October 15, 2022, for refusing to take the PPG exam by not allowing him to purchase commissary food. San Miguel alleges this punishment is longer than punishments imposed on TDCJ inmates.

This claim is effectively a restatement of San Miguel's prior claims regarding the severity of punishment at TCCC and his refusal to take the PPG exam. As such, his substantive due process claim is dismissed for the same reasons. His equal protection claim also fails because he does not identify a class of similarly situated individuals who are being treated differently. The TDCJ inmates, per San Miguel's allegations, are not similarly situated—they are, in effect, worse off than TCCC clients but, also per his allegations, treated better. These facts fail to state a claim for an equal protection violation.

Finally, regarding procedural due process, his complaint shows that he had a PPG evaluation on January 1, 2018. (ECF No. 1-1 at 57-58.) The last time San Miguel complained about the restriction was on May 5, 2020, when his request to have one commissary purchase

was denied. (ECF No. 1-1 at 64-65.) On May 22, 2020, San Miguel filed a motion for a temporary restraining order and preliminary injunction in Lamb County District Court, complaining that this restriction, among others, violated his constitutional rights. The case was dismissed for lack of jurisdiction, and the dismissal was affirmed on appeal. *See San Miguel v. McLane*, No. 07-21-00058-CV, 2022 WL 2960141 (Tex. App.—Amarillo July 26, 2022, pet. denied).

At the latest, San Miguel was aware of this claim by May 22, 2020; however, he did not file his federal complaint until June 14, 2023, over a year after the statute of limitations period had expired. Accordingly, this claim must be dismissed as untimely filed.

*Claims 8 & 9: Loss of Property*

In his eighth and ninth claims, San Miguel argues Defendants violated his procedural and substantive due process rights, as well as his right to equal protection of the law, when they unlawfully deprived him of his property when he moved from Tier 2 to Tier 1 in 2018. San Miguel does not state exactly what property was confiscated, but notes that, due to this unconstitutional deprivation, he went on a hunger strike for 22 days starting July 18, 2018. He further claims that his procedural and substantive due process rights were violated when TCCC employees popped popcorn in front of his Secure Management Unit cell while he was on a hunger strike from July 27-29, 2018. San Miguel complained of this in a grievance filed on August 3, 2018, which was "not resolved" on August 8, 2018. (ECF No. 1-1 at 48.)

San Miguel's claims accrued on August 8, 2018, and he therefore had until August 8, 2020, to file his federal civil rights complaint. Accordingly, because these claims are untimely by almost three years, they must be dismissed as untimely filed.

E. Pending Motions

San Miguel has two pending motions before the Court: a motion for preliminary injunction, wherein he asks the Court to enjoin Defendants from "subjecting Samuel San Miguel, Martin Lujan, or any TCCC civil committee to conditions of confinement that amount to punishment . . . and order that all TCCC civilly committed persons/patients housed therein be treated equally." (ECF No. 5.) San Miguel also moves for a hearing on this motion. (ECF No. 7.)

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

San Miguel has failed to demonstrate that Defendants violated his constitutional rights, and therefore his motion for preliminary injunction is denied. *See Ponce v. Socorro Indep. Sch. Dist.*, 508 F.3d 765, 772 (5th Cir. 2007) (holding that plaintiffs did not show a substantial likelihood of success on the merits where the court concluded that no constitutional violation had occurred). His motion for hearing is also denied.

## IV. Conclusion

Ordinarily, the Court affords a pro se plaintiff an opportunity to correct any deficiencies in their complaint before subjecting it to preservice dismissal under § 1915(e). *Brewster*, 587 F.3d 764, 768. However, the review of San Miguel's complaint shows that the vast majority of

his claims are either time-barred or have been previously litigated. There is no way to cure these deficiencies.

It is hereby **ORDERED** that Martin Lujan's claims are **DISMISSED WITHOUT PREJUDICE** and may be refiled in a separate complaint if Lujan so chooses.

It is further **ORDERED** San Miguel's complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B).

It is finally **ORDERED** that San Miguel's Motion for Preliminary Injunction (ECF No. 5) and Motion for Hearing (ECF No. 7) are **DENIED.**

SIGNED this 4th day of October, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE